The Honorable Bobby Tullis State Representative Box 277 Mineral Springs, Arkansas 71851
Dear Representative Tullis:
This is in response to your request for an opinion on several questions involving the trespassing of animals on posted lands. Your questions are restated below and answered in the order posed.
Your first question is as follows:
 Does a hunting dog owned by one person entering on the posted property of another person without permission for "recreational purposes" constitute an unlawful act under Arkansas law?
In response to this question, I have attached a copy of Opinion No. 89-045 which I believe answers it satisfactorily. It was concluded in Opinion No. 89-045 that the question of whether this conduct would constitute an unlawful act may depend upon the dog owner's intent, and therefore reference must be had to the particular facts of each situation in order to determine whether a criminal violation has occurred.
Your second questions is whether a landowner who has properly posted his real property has any legal recourse against the owner of a dog which trespasses on his posted property without permission. Opinion No. 89-045 also addresses this question, and notes that in certain factual circumstances, an action may lie for civil trespass. If no damages can be shown, however, the landowner may be awarded only nominal damages.
Your third question is whether a landowner who has properly posted his real property has the right to use physical force to prevent a dog from trespassing on his land or to restrain or capture a dog which is trespassing. Relevant Arkansas case law on this point is sparse, and there appear to be no relevant statutes which are applicable to trespassing dogs.[1] We do know from such cases as REINMAN v. WORLEY, 125 Ark. 567 (1916), and CAGLE v. MONROE,215 Ark. 518, 221 S.W.2d 1 (1949), that a landowner may not use excessive force in driving animals from his property. The rule laid down in the cases above is that a landowner is entitled to use only such force as is reasonably necessary to drive the animals from his land. These cases, however, do not address the question of whether the landowner can restrain or capture the animal. It is my opinion that such restraint or capture must conform to the same reasonableness standards set out in the cases cited above, and that any restraint or capture should be in an effort to protect the landowner's land, or property thereon, (including livestock), and should only be maintained until such time as the dog's owner can reclaim it. Of course, whether a particular landowner's conduct in this regard is reasonable will depend upon the facts of each particular case.
Your fourth question is as follows:
 In the event a hunting dog is injured on posted land, or by the landowner, does the dog owner have the right to enter on posted land to recover or to aid his dog?
The answer to this question is probably "no" under the new Act 35 of 1989. That act provides for the posting of lands and provides in Section 2 as follows:
 No person shall enter for recreational purposes upon real property posted pursuant to this act without written permission of the owner or lessee of the real property.
Although it could be argued that a dog owner going onto posted land to retrieve an injured dog is not entering for "recreational" purposes, Section 6 of the act provides:
 It shall be unlawful for any person to enter upon any real property posted under the provisions of this act without the written consent of the owner or lessee of the real property.
This section does not require that the entry be for recreational purposes. Therefore, a dog owner entering upon posted land to retrieve an injured dog would appear to be in violation of the act.
The act appears to change the common law on this question, as principles of common law would have probably granted the dog owner a right to retrieve a dog, if it was injured. In KEARBEY v. DOUGLAS, 215 Ark. 523, 221 S.W.2d 426 (1949), the Arkansas Supreme Court held that:
 . . . one whose chattels are wrongfully or negligently placed on another's land does not have the privilege of entry to remove them except in an emergency threatening serious injury to the chattels. [Citation omitted.] He should demand the property, and if the owner refuses permission to enter his land there is a conversion for which trover will lie. [Citation omitted.] Here the appellant, by asserting title to the property, has in effect refused to permit its removal. Hence the chancellor properly provided in his decree that the appellees might enter the land to retrieve their equipment. This, however, is not a matter of right, and in a somewhat similar situation we have held that the landowner is entitled to nominal damages for the trespass.
It appears that this common law rule would allow the dog owner to enter the land to retrieve his chattel, (the dog), if serious injury was threatened.[2] Act 35 of 1989, however, has superseded this rule at least as regards the entry of posted lands. The only defense set out in that act to a charge of knowing entry is some form of consent. Act 35 of 1989, 6. It thus appears that consent is necessary for a dog owner to retrieve a trespassing dog, or he may risk a violation of the act.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.
[1] It is my opinion that A.C.A. 2-38-101, et seq. entitled "Livestock Running at Large or Straying", does not apply to dogs.
[2] If no serious injury is threatened, it appears that the dog owner's recourse is to ask the landowner for permission to retrieve his dog.